**WO**                                                                                       KM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy Paul Olmos, | No.   CV-24-08239-PCT-MTL (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| Jennie Cunico, et al., | |
| Defendants. | |

    Self-represented Plaintiff Timothy Paul Olmos, who is confined in the Arizona State Prison-Kingman, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 6). The Court gave Plaintiff 30 days to pay the filing and administrative fees or file an Application to Proceed In Forma Pauperis. Plaintiff subsequently filed a Motion for Extension of Time (Doc. 7) and an Application to Proceed In Forma Pauperis (Doc. 8). The Court will grant the Motion for Extension of Time; accept the Application to Proceed as timely filed; grant the Application to Proceed; dismiss Defendant Cunico and Counts One, Three, and Four; and require Defendants Thornell and Gann to answer Count Two.

**I.     Application to Proceed In Forma Pauperis and Filing Fee**

    The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will not assess an initial partial filing fee. *Id.* The statutory filing fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C.

§ 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

## II.     Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe [self-represented litigant's] filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a self-represented prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.*

(quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

### III.  Complaint

In his four-count Complaint, Plaintiff sues Arizona Department of Health Services (ADHS) Director Jennie Cunico; Arizona Department of Corrections, Rehabilitation, and Reentry (ADCRR) Director Ryan Thornell; and Assistant Director of the Medical Services Contract Monitoring Bureau Larry Gann.  Plaintiff seeks declaratory and injunctive relief and monetary damages.

In **Count One**, Plaintiff alleges his Fourteenth Amendment rights were violated when he was denied equal access to adequate medical care as similarly situated persons, without a rational basis.  Plaintiff asserts Defendant Cunico administers Arizona's communicable disease control program and that, under ADCRR Department Order 1102, "if the ADCRR medical services technical manual does not delineate a protocol for managing a specific communicable disease, the ADCRR contracted healthcare provider 'shall' follow the ADHS and CDC guidance for the condition." (Doc. 6 at 3.)  According to Plaintiff, on September 12, 2023, the CDC recommended all persons over six months old should receive an annual COVID-19 vaccine and stated the vaccine could be administered at the same time as the flu vaccine.  (*Id.* at 3-4.)  Plaintiff alleges that in December 2023, Defendants Thornell and Gann "did not make the COVID-19 vaccine available at a Huachuca [Unit] pop-up flu shot clinic." (*Id.*)  Plaintiff received a flu shot at the clinic, but not a COVID-19 vaccine.  (*Id.*)

On December 7, 2023, Plaintiff submitted an informal complaint requesting an annual COVID-19 booster shot.  (*Id.*)  On January 12, 2024, an assistant health services administrator denied Plaintiff's final appeal "because [The Geo Group (TGG)] receives 'COVID vaccines from the [Arizona] Department of Health,' but '[t]he Department of Health has quit issuing us the COVID vaccines." (*Id.*)  Plaintiff was told he would get a vaccine when it became available.

Plaintiff contends section 3 of Department Order 1102 institutes a "state-created right for ADCRR inmates to receive both the annual flu shot and the COVID-19 annual

vaccine."[1]  (*Id.*)  He contends "there is enough stock of the COVID-19 annual vaccine on the open market for Thornell and Gann to obtain enough doses for [Plaintiff] and other Huachuca inmates to receive the annual COVID-19 vaccine."  (*Id.*)

Plaintiff alleges that on February 1, 2024, he began to suffer from a sore throat, which progressively worsened.  On February 3, 2024, Plaintiff requested testing for COVID-19 and strep throat.  On February 4, 2024, a licensed practical nurse tested Plaintiff for influenza types A and B and strep throat; the tests came back negative.  The nurse denied Plaintiff's request for a COVID-19 test.  Plaintiff's symptoms worsened and on February 6, 2024, Medical Director Dr. Richardson ordered Tamiflu, Tylenol, and Tessalon to treat Plaintiff's symptoms.  Plaintiff was ill "for the entire month of February 2024."  (*Id.*)

Plaintiff states he has diligently received both flu and COVID-19 vaccines when available and prisoners in his unit have requested vaccines at town hall meetings.  (*Id.* at 6.)  During the March 13, 2024 town hall meeting, "staff claimed that [Defendant] Cunico had received a shipment of the COVID-19 [vaccines]" and prisoners need only submit a Health Needs Request (HNR) "to TGG medical staff."  (*Id.*)  Plaintiff asserts this was false because he submitted a March 29, 2024 HNR requesting the vaccine and received an April 2, 2024 response stating the vaccine was still unavailable.  (*Id.*)

Plaintiff filed an April 4, 2024 grievance asking for the vaccine within 30 days and that all future annual COVID-19 vaccines be made available to ADCRR inmates within 30 days of the CDC's approval for use by the general public.  (*Id.*)  Plaintiff received an April 17, 2024 response that erroneously stated the vaccine was available and had been "supplied to inmates that meet the qualifications and have requested them."  (*Id.* at 6-7.)  Plaintiff appealed the decision and was told that the vaccine was not available.  (*Id.* at 7.)

At a June 25, 2024 town hall meeting, inmates were told the vaccine was

---

[1] While section 3 of Department Order 1102 concerns the management of suspected or confirmed cases of communicable diseases, it does not mandate the provision of the flu or COVID-19 vaccines.  *See* ADCRR Department Order 1102, https://corrections.az.gov/sites/default/files/documents/policies/1100/DO%201102%20-%20Eff.%2010-18-23.pdf, at 3.

1  unavailable. At a September 18, 2024 town hall meeting, inmates were told the refrigerator
2  used to store the vaccines at the proper temperature was not working. On October 7, 2024,
3  Plaintiff submitted an HNR requesting the vaccine and was told he "[would] be scheduled
4  if/when it becomes available to us." (*Id.*)

5  Plaintiff argues that Arizona's communicable disease control program "entitles all persons who meet the expansive eligibility criteria for the annual COVID-19 vaccine to receive it after it is approved by the CDC—which is typically in August or September." (*Id.*) Plaintiff contends he is "being subjected to unequal treatment in two . . . ways by the Defendants' failure or refusal to dispense the annual COVID-19 vaccine to him." (*Id.*) First, Plaintiff contends Department Order 1102 "entitles all persons in Thornell's custody to receive all immunizations that they individually qualify for," regardless of where they are housed." Plaintiff argues the permanent injunction in *Jensen v. Thornell*, CV-12-00601-PHX-ROS requires immunizations be offered to prisoners. Plaintiff alleges he is being denied access to the annual COVID-19 vaccine "based solely on the fact that he is housed in a private prison, and there is no rational basis for the difference in treatment." (*Id.* at 7-8.)

17 Second, Plaintiff argues Arizona Revised Statutes § 36-104(1)(b)(ii) entitles all Arizona residents to receive "a variety of public health support services to control communicable diseases," including COVID-19. Plaintiff asserts he is "receiving unequal treatment, for all Arizona residents are entitled to receive the annual COVID-19 vaccine (including inmates living in ADCRR institutions), but [Plaintiff] continues to be denied this same benefit based solely on the fact that he is housed in a private prison without an rational basis for this difference in treatment." (*Id.* at 8.)

24 Plaintiff contends Defendant Thornell is responsible for "establishing, monitoring, and enforcing overall operations, policies, and practices throughout the Arizona state prison system," including ensuring "that all persons committed into his custody receive adequate health and medical care." (*Id.*)

28 Plaintiff asserts Defendant Gann is "responsible for establishing, monitoring, and

TERMPSREF

- 5 -

1  enforcing system-wide health care policies and practices," including "supervising the
2  provision of adequate medical care for all persons within Thornell's custody,
3  including . . . prisons . . . operated by private prison contractors." (*Id.*)  Plaintiff contends
4  Defendants Thornell and Gann have provided Huachuca inmates with flu vaccines but not
5  COVID-19 vaccines, despite making both vaccines available to inmates in ADCRR
6  facilities.  (*Id.* at 8-9.)

7  Plaintiff contends Defendant Cunico "is charged with protecting all Arizona
8  residents from COVID-19" and has "provided Arizona residents with prompt access to the
9  annual COVID-19 vaccine for each year that they were approved by the CDC, which
10 includes persons housed in ADCRR institutions."  (*Id.* at 9.)  Plaintiff claims "TGG has
11 repeatedly declared that COVID-19 vaccines are unavailable—which is not true."  (*Id.*)
12 He asserts "Cunico's failure to ensure that all Huachuca residents have access to
13 COVID-19 vaccines serves to treat [him] differently from similarly-situated Arizona
14 residents that also fall within the drug's expansive eligibility window, and there is no
15 rational basis for this difference in treatment."  (*Id.*)

16 As his injury, Plaintiff alleges his constitutional rights have been violated, and he
17 has suffered physical pain, emotional injuries, and psychological distress while he "battled
18 through two bouts of the flu—likely a COVID-19 infection."  (*Id.*)  Plaintiff claims a
19 COVID-19 infection could result in hospitalization, permanent loss of lung function, long
20 COVID, autoimmune disorders, or death.  (*Id.*)

21 In **Count Two**, Plaintiff alleges Defendants Thornell and Gann have violated his
22 Eighth and Fourteenth Amendment rights by "subjecting [him] to a substantial risk of
23 serious harm and injury" by denying him access to annual COVID-19 immunizations.  (*Id.*
24 at 10.)  Plaintiff contends Defendants Thornell and Gann "recognize the excessive risk that
25 COVID-19 poses to inmates" and "have previously implemented a host of measures to
26 limit the transmission of COVID-19 among [inmates] because the risk to their health by
27 this evolving pathogen is so obvious."  (*Id.*)  Plaintiff argues that "nevertheless, Thornell
28 and Gann have made the subjective decision to . . . deny[ Plaintiff] access to the annual

TERMPSREF

- 6 -

COVID-19 vaccine for two flu seasons in a row despite repeated complaints raised by [Plaintiff] and his fellow Huachuca residents through [town hall meetings] and grievances." Plaintiff asserts Defendants Thornell and Gann are "deliberately indifferent to the risk that their decision poses to [Plaintiff's] health." (*Id.*)

In **Count Three**, Plaintiff claims Defendant Thornell, through contract monitors, "consistently interferes with inmates' right to receive free legal research materials . . . for personal, noncommercial use from government libraries that subscribed to Westlaw and LexisNexis, even though the conduct of libraries and inmates is lawful under the fair use and library exceptions to federal copyright law." (*Id.* at 11.) Plaintiff claims he was "the victim of this targeting by Thornell's agents at two private prisons, which violated his right to receive information from three libraries." (*Id.*)

Plaintiff gives a lengthy description of various entities from which he received free legal materials from 2013 to 2019. He claims that due to ADCRR's policies, these entities no longer provide legal materials. (*Id.* at 12-14.) Specifically, from 2022 to 2023, Plaintiff was able to receive monthly shipments of legal materials from the State Law Library of Montana (SLLM) without issue. Plaintiff received his last shipment of materials from SLLM in June 2023, with notations on the envelope indicating the materials had been subjected publication review. (*Id.* at 15.) Plaintiff sent a letter to SLLM inquiring about his later unfulfilled requests and was informed that the library had implemented a new policy limiting the program to Montana inmates. (*Id.*)

Plaintiff claims Defendant Thornell violated his First and Fourteenth Amendment rights by enacting a "free materials" policy that limited Plaintiff's ability to obtain such materials. (*Id.*) Plaintiff claims his use of library programs to receive free materials has always been minimal, roughly two to six pieces of mail per week. (*Id.* at 16.) According to Plaintiff, the Ninth Circuit has determined 31 pieces of mail per day to have minimal impact on prison operations. Plaintiff further claims "no ADCRR or TGG staff have ever objected to [Plaintiff's] receipt of materials from SLLM based on a legitimate and neutral governmental objective." (*Id.*) Plaintiff argues that application of the "materials policy"

to his mail "was arbitrary or irrational." Plaintiff further claims he does not have financial resources or means to secure legal materials "by any other means than from a library or other organization that provides free materials." (*Id.*) Plaintiff further argues "the amount of incoming and outgoing mail that was generated from [Plaintiff's] participation in the SLLM Program is far below the 'minimal' threshold set by [the Ninth Circuit]." (*Id.*)

Plaintiff contends Defendant Thornell is responsible for the materials policy and asserts "SLLM acquiesced to the requests—or demands—of the person(s) enforcing the materials policy by enacting a new SLLM policy that limits the availability of the SLLM Program to Montana inmates." (*Id.* at 17.) Plaintiff argues "Thornell's materials policy is the proximate cause of the deprivation of [Plaintiff's] rights under the First and Fourteenth Amendment[s]." (*Id.*)

In **Count Four**, Plaintiff contends Defendant Thornell violated his Fifth and Fourteenth Amendment rights and 18 U.S.C. § 1503 by "obstructing justice." Plaintiff claims Defendant Thornell removed law libraries from the prisons and instead implemented Department Order 902, which he claims: (1) denies prisoners generalized legal research tools such as practice treatises and forms; (2) bars archiving of older editions of books and their pocket parts; (3) distributes tablets with a LexisNexis "Resource Library" application, which is insufficient because (a) the statutes, court rules, and constitutions do not contain previous versions of the statutes or rules, (b) it includes "Ballentine's Law Dictionary instead of Black's Law Dictionary," (c) it lacks the State Bar of Arizona's Arizona Appellate Handbook and Hertz and Liebman's Federal Habeas Corpus Practice and Procedure, and (d) does not allow prisoners to directly file documents with the Court or access PACER; (4) only provides a few select legal forms and does not include the Bill of Costs form; (5) bans the establishment of an inmate legal assistance program; and (6) destroys "all avenues for inmates to receive free materials from law libraries." (*Id.* at 19-21.)

Plaintiff also claims that because Defendant Thornell "opted to not provide any affirmative assistance to inmates after the initial filing of a qualified claim," he is therefore

TERMPSREF

- 8 -

1  "obligated" to "provide the tools inmates need to fend for themselves" and "not actively
2  hamper inmates' ability to file meaningful court documents in a timely manner." (*Id.* at
3  25.) He contends Thornell has not done this. Plaintiff claims he was unable to file a bill
4  of costs in his previous lawsuit within 14 days "due to Thornell's failure to provide
5  him . . . (1) the form; (2) electronic document preparation; and (3) access to PACER." (*Id.*
6  at 26). Plaintiff claims the "'natural and probable effect' of this scenario is [Plaintiff's]
7  inability to file a timely Bill." (*Id.*) Plaintiff contends "Thornell could have offset the
8  impact of this environment by joining [Plaintiff's] motion to extend the deadline to file the
9  Bill," but instead opposed the motion and asked the Ninth Circuit to affirm the Court's
10  denial of the motion. (*Id.*)

Plaintiff further alleges Defendant Thornell "removed inmate typewriters from all prisons, and makes electronic document preparation tools available to only a few inmates." (*Id.*) Plaintiff claims this forced him to abandon post-conviction relief claims when the trial court denied his motion for leave to file an over-length petition. Plaintiff argues Thornell's actions "fall well within the heartland of purposeful conduct to obstruct ongoing or future litigation" and have the "'natural and probable effect' of interfering with [Plaintiff's] ability to understand and concisely plead the chief PCR claims before the expiration of the Petitioner's final filing deadline." (*Id.*)

**IV.    Failure to State a Claim**

    **A.    Count One – Equal Protection**

"To state a claim . . . for a violation of the Equal Protection Clause . . . [,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiff has not alleged he is a member of a protected class.

The United States Supreme Court has recognized "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564

(2000); *see also SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). Even under this standard, Plaintiff has failed to state a claim. Plaintiff has failed to allege he was treated differently than other Arizona State Prison-Kingman prisoners and that there was no rational basis for treating him differently; according to Plaintiff, the same COVID-19 supply and storage issues that have prevented him from receiving a vaccine have also prevent other inmates the Arizona State Prison-Kingman from receiving the vaccine.

Moreover, treatment of prisoners is highly discretionary, and it is well-settled that courts are to afford prison officials great deference in their management of correctional facilities. *See Hewitt v. Helms*, 459 U.S. 460 (1983); *Hutto v. Finney*, 437 U.S. 678 (1976); *Norwood v. Vance*, 591 F.3d 1062, 1066 (9th Cir. 2010) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). Courts have found that prisoners' class-of-one claims challenging their conditions of confinement or alleging arbitrary treatment are not cognizable due to the discretionary decision-making inherent in the management of prisons and treatment of prisoners. *See Rodriguez v. Dupnik*, CV-12-00405-TUC-CKJ (D. Ariz. Sept. 25, 2013) (dismissing prisoner's class-of-one claim alleging he was treated differently than other inmates in administrative segregation).

The Court will dismiss Count One for failure to state a claim.

### B. Count Three – Legal Materials

In Count Three, Plaintiff alleges he was able to receive free legal materials from 2013 to 2019,[2] but Defendant Thornell implemented a free materials policy, to which SLLM "acquiesced," and Plaintiff is now unable to receive free materials from this library.

With respect to regarding the free materials policy implemented in 2023, Plaintiff does not describe the materials policy at issue or explain how it limits his ability to receive legal materials from law libraries that provide those materials to prisoners. More

---

[2] To the extent Plaintiff raises a claim relating to the denial of free materials from 2013 to 2019, such a claim is untimely. The statute of limitations in an action under 42 U.S.C. § 1983 is the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). The Arizona statute of limitations for personal injury actions is two years. *See* Ariz. Rev. Stat. § 12-542(1).

importantly, Plaintiff alleges that on October 16, 2023, he received a letter from the SLLM that "(1) announced a new policy [that] the SLLM program is now limited to Montana inmates; and (2) suggested that [Plaintiff] contact the [University of Arizona Law Library] to obtain materials." (Doc. 6 at 15.) This allegation demonstrates Plaintiff no longer receives materials due to *SLLM's* policy, not Defendant Thornell's. Plaintiff alleges no facts regarding his efforts to obtain legal materials from the University of Arizona Law Library, nor does he allege whether or how Defendant Thornell's materials policy limited his current ability to obtain legal materials from other libraries. Plaintiff has failed to state a claim in Count Three and the Court will dismiss this claim.

### C. Count Four – "Obstruction" and Access to Courts

Plaintiff alleges Defendant Thornell's policies regarding provision of legal materials to prisoners is an "obstruction of justice" in violation of 18 U.S.C. § 1503. Section 1503 is a federal criminal statute that has no bearing on this civil case.

To the extent Plaintiff claims ADCRR's policies regarding the provision of legal materials denied him access to the courts, he also fails to state a claim. The right of meaningful access to the courts prohibits officials from actively interfering with inmates' attempts to prepare or file legal documents. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). The right of access to the courts is only a right to bring petitions or complaints to federal court and not a right to discover such claims or even to litigate them effectively once filed with a court. *Id.* at 354. The right "guarantees no particular methodology but rather the conferral of a capability–the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* at 356.

As a matter of standing, for an access-to-courts claim, a plaintiff must show that he suffered an "actual injury" with respect to contemplated litigation. *Id*. at 349. To show actual injury with respect to contemplated litigation, the plaintiff must demonstrate that the defendants' conduct frustrated or impeded him from bringing to court a nonfrivolous claim that he wished to present. *Id*. at 352-53.

"[T]he injury requirement is not satisfied by just any type of frustrated legal claim."

*Id.* at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.* at 355. The nonfrivolous claim must be a direct or collateral attack on the inmate's sentence or a challenge to the conditions of his confinement. *Id.* "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original).

As his injury, Plaintiff alleges he was unable to timely file a bill of costs in a previous civil case in this Court. He also claims Defendant Thornell's policy of limiting legal materials prevented him from "learning how to concisely plead his claims." (Doc. 6 at 26.) According to Plaintiff, after his motion for leave to file an overlength petition for post-conviction relief was denied in state court, his inability to produce a shorter, handwritten petition meant he had to abandon some of his post-conviction relief claims. These allegations concern Plaintiff's ability to effectively litigate his claims, not his ability to bring those claims to court. *See Casey,* 518 U.S. at 354. Plaintiff has not alleged facts showing he was unable to bring to court a nonfrivolous direct or collateral attack on his sentence or a challenge to his conditions of confinement. To the contrary, Plaintiff's account of his previous filings indicates his access to both federal and state courts has been unimpeded. The Court will therefore dismiss Count Four for failure to state a claim.

**V.     Claims for Which an Answer Will be Required**

Liberally construed, Plaintiff has adequately stated an Eighth Amendment claim against Defendants Thornell and Gann in Count Two for the alleged failure to provide Plaintiff access to annual COVID-19 immunizations.[3] The Court will require Defendants Thornell and Gann to answer Count Two in their individual and official capacities.

. . . .

---

[3] *See Jensen v. Thornell*, 2023 WL 2838040, *19 (D. Ariz. Apr. 7, 2023) (Issuing a permanent injunction to address ADCRR's systemic healthcare deficiencies that requires, in part, that "[p]risoners shall be offered all immunizations recommended by a mainstream evidence-based national guideline.").

## VI. Warnings

### A. Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed in forma pauperis.  Failure to comply may result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

### C. Copies

Because Plaintiff is currently confined in an ADCRR Complex or Private Facility subject to General Order 23-19, Plaintiff can comply with Federal Rule of Civil Procedure 5(d) by including, with every document Plaintiff files, a certificate of service stating that this case is subject to General Order 23-19 and indicating the date the document was delivered to prison officials for filing with the Court.  Plaintiff is not required serve Defendants with copies of every document or provide an additional copy of every document for the Court's use.

**If** Plaintiff is transferred to a facility other than one subject to General Order 23-19, Plaintiff will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document Plaintiff files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court.  *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these

warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)   Plaintiff's Motion for Extension of Time (Doc. 7) is **granted**; the Court accepts Plaintiff's April 25, 2025 Application to Proceed In Forma Pauperis as timely filed.

(2)   Plaintiff's Application to Proceed In Forma Pauperis (Doc. 8) is **granted**.

(3)   As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

(4)   Counts One, Three, and Four are **dismissed** without prejudice.

(5)   Defendant Cunico is **dismissed** without prejudice.

(6)   If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be filed on the court-approved form and retyped or rewritten in its entirety (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

(7)   Defendants Thornell and Gann must answer Count Two in their individual and official capacities.

(8)   The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Thornell and Gann.

(9)   Plaintiff must complete[4] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

---

[4] If a Defendant is an officer or employee of ADCRR, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at ADCRR's Central Office unless the officer or employee works there.

(10) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(11) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(12) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(13) A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(14) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying

additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(15)   Defendants must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(16)   Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(17)   This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 7th day of July, 2025.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge

TERMPSREF